O

# United States District Court
# Central District of California

| | |
|---|---|
| MALIBU BEHAVIORAL HEALTH SERVICES INC.,<br><br>       Plaintiff,<br><br>   v.<br><br>MAGELLAN HEALTHCARE, INC., et al.,<br><br>       Defendants. | CASE NO. 2:20-cv-01731-ODW (PVCx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT [38]** |

## I.  INTRODUCTION

This action arises from a medical insurance payment dispute between a medical service provider and an insurer.  Plaintiff Malibu Behavioral Health Services, Inc., d/b/a South California Road to Recovery ("Malibu") brings a First Amended Complaint ("FAC") against Defendant AmeriHealth Insurance Company of New Jersey ("AmeriHealth") and AmeriHealth's agent, Defendant Magellan Healthcare, Inc. ("Magellan"; together with AmeriHealth, "Defendants"), seeking $394,985 for unpaid medical services provided to a patient, LK.  (*See generally* FAC, ECF No. 31.)

Now before the Court is AmeriHealth's Motion to Dismiss the FAC.[1]  (Mot. to Dismiss ("Motion" or "Mot."), ECF No. 38.)  The matter is fully briefed.  (*See* Mot.; Opp'n to Mot. ("Opp'n"), ECF No. 41; Reply ISO Mot. ("Reply"), ECF No. 42.)  For the following reasons, the Motion is **GRANTED in part** and **DENIED in part**.[2]

## II. BACKGROUND

Malibu provides monitored, residential, detoxification services with medication assisted treatment.  (FAC ¶ 9.)  From June 2, 2016, to December 31, 2016, Malibu provided a patient, LK, with "covered treatment . . . for mental health and substance use disorder."  (*Id.* ¶¶ 2, 38.)  At the time, LK was insured by AmeriHealth under its New Jersey POS Plus policy (the "Policy"), which provides coverage for out-of-network services such as those provided to LK by Malibu.   (*Id.* ¶¶ 2, 33; *see* Decl. of Charles Kiehl Cauthorn Ex. A ("Policy"), ECF No. 38-1.)[3]  And AmeriHealth's agent, "Magellan[,] had exclusive control over benefits decisions, utilization management and claims handling related to LK's treatment at Malibu."  (FAC ¶¶ 12–13.)

Malibu alleges that on January 6, 2016, prior to admitting LK as a patient, it contacted AmeriHealth to conduct a Verification of Benefits ("VOB") call.  (*Id.* ¶ 39.)  Malibu alleges that all parties understood the term "usual, customary and reasonable rate" ("UCR") to mean 100% of the fully billed amounts charged by Malibu for its services, and that "AmeriHealth's agent promised and informed Malibu that it would be paid for behavioral health services at 90% of UCR (90% of billed charges) until

---

[1] Magellan filed its Answer to the FAC on May 29, 2020.  (Magellan's Answer, ECF No. 36.)

[2] After carefully considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[3] "Certain written instruments attached to pleadings may be considered part of the pleading."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing Fed. R. Civ. P. 10(c)).  "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Id.*  "[T]he district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."  *Id.*  Here, the Court considers the Policy as incorporated by reference into the FAC because Malibu refers extensively to the Policy, and the Policy forms a substantial basis for Malibu's claims.  (*See generally* FAC.)

LK's out-of-pocket maximum had been met, at which point AmeriHealth would pay 100% of UCR (100% of billed charges)." (*Id.* ¶ 39–42.)

Malibu also alleges it obtained "a series of binding pre-authorizations" from Magellan regarding LK's treatment, which are reflected in a series of written confirmation letters (the "Confirmations") sent to Malibu by Magellan. (*Id.* ¶¶ 44, 47–77.) Each Confirmation preauthorized treatment for LK for a given number of days, and each Confirmation also included the following disclaimer:

> Please note that this authorization is not a determination of eligibility or a guarantee of payment. Coverage and payment are subject to the member's eligibility at the time services are provided, and the benefits, limitations, exclusions and other specific terms of the health benefit plan at the time services are provided. The member may be responsible for charges incurred for unauthorized services or for applicable pre-certification penalties. If the member is receiving services from a non-participating provider, the member may have significant higher out-of-pocket expenses than if services are provided by a participating provider.

(FAC Ex. D ("Confirmations"), ECF No. 48-4.) Notwithstanding these disclaimers, Malibu alleges that it relied upon the written authorizations and "rendered the services as specified [in the letters] and timely invoiced AmeriHealth at the rates agreed to during the initial VOB call." (FAC ¶¶ 46, 48–77.)

Malibu acknowledges it "received payment for covered treatment from AmeriHealth for services provided to LK from January 3, 2016 through June 1, 2016." (*Id.* ¶ 81.) But Malibu claims Defendants refused to pay for the services rendered from June 2, 2016 to December 31, 2016, (*id.* ¶ 80), all while Magellan "continued to pre-authorize services for LK performed by Malibu and agreed to pay claims at a specific rate," (*id.* ¶ 82). Malibu alleges that the unpaid amount still owed by AmeriHealth equals $394,985. (*Id.* ¶ 83.)

With respect to Defendants' refusal to pay, Malibu claims that "AmeriHealth and/or Magellan's representatives made numerous, inconsistent statements as to the grounds for claim denial" and gave "arbitrary, inconsistent and unclear justifications

for non-payment in response" to timely filed internal appeals. (*Id.* ¶¶ 85, 86, 88.) Malibu alleges that "[u]ltimately, AmeriHealth and/or Magellan informed Malibu and LK that, without their knowledge or consent, [Defendants] had unilaterally rescinded the [P]olicy at some point in late 2016 or early 2017, despite continuing to accept premium payments and representing active coverage." (*Id.* ¶ 90.)

Based on these and other facts, Malibu asserts the following eight claims against Defendants: (1) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code section 17200; (2) breach of written contract based on the Confirmations; (3) breach of oral contract; (4) breach of implied contract; (5) promissory estoppel; (6) fraudulent inducement; (7) open book account; and (8) breach of written contract based on the Policy, as assignee and attorney-in-fact. (*See id.* ¶¶ 93–237.) Malibu asserts the first seven claims on behalf of LK, and it asserts the eighth claim in its own name as an assignee and attorney-in-fact. (*See generally id.*)[4] AmeriHealth now moves to dismiss all eight claims against it under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. (*See generally* Mot.) AmeriHealth alternatively moves to dismiss Malibu's eighth claim under Rule 12(b)(1) on the ground that Malibu lacks standing. (*See id.* at 10–12.)

## III.   LEGAL STANDARDS

Rule 12(b)(6) provides for dismissal of a complaint for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to

---

[4] Before providing treatment to LK, Malibu obtained an Assignment of Benefits (the "Assignment") authorizing Malibu to collect payments directly from AmeriHealth. (FAC ¶ 3; *see* FAC Ex. A ("Assignment"), ECF No. 48-1.) After treatment services were provided, LK executed a Durable Power of Attorney (the "POA") naming Malibu as her attorney-in-fact for all claims related to the recovery of payment for Malibu's treatment services. (FAC ¶ 3; *see* FAC Ex. B ("POA"), ECF No. 48-2.)

raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Rule 12(b)(1) also provides for dismissal of a complaint for lack of subject-matter jurisdiction.  The Article III case or controversy requirement limits a federal court's subject-matter jurisdiction by requiring, among other things, that plaintiffs have standing to bring their claims.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121–22 (9th Cir. 2010).  "Rule 12(b)(1) jurisdictional attacks can be either facial or factual."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  When a motion to dismiss attacks subject-matter jurisdiction on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  Moreover, the pleading standards set forth in *Twombly* and *Iqbal* apply with equal force to Article III standing when it is being challenged on the face of the complaint.  *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a district court grants a motion to dismiss, it should provide leave to amend if the complaint could be saved by amendment.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *see also* Fed. R. Civ.

P. 15(a)(2) ("The Court should freely give leave when justice so requires."). However, the district court may deny leave to amend based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Leadsinger, Inc. v. BMC Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (brackets omitted) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   DISCUSSION

AmeriHealth moves to dismiss all eight claims; the Court turns to each in the order presented in the FAC.

## A.   UCL Claim (Claim One)

Malibu brings its first claim under the UCL seeking: (1) "compensation" in the form of "disgorgement of illegal profits and/or ill-gotten financial gains and restitutionary damages," (FAC ¶ 104); and (2) an injunction prohibiting AmeriHealth from continuing to misrepresent benefits and wrongfully deny claims, (*id.* ¶ 105). AmeriHealth argues this claim should be dismissed because Malibu fails to establish it is entitled to equitable remedies under the UCL, as Malibu fails to plead (1) the inadequacy of legal remedies, which is a prerequisite to obtaining any equitable relief under the UCL, and (2) continuing misconduct, which is a prerequisite to obtaining injunctive relief. (Mot. 20, 20 n.7; *see also* Reply 12–13.)[5]  In its Opposition, Malibu does not address the issue of continuing misconduct, but it insists legal remedies are inadequate here because "[l]egal remedies do not include the redress that injunctive relief in the form of claims reprocessing and future injunctive relief is capable of

---

[5] AmeriHealth further argues that this claim should be dismissed on grounds that (1) Malibu fails to allege a claim under the UCL's "unfair" prong, as AmeriHealth and Malibu are not competitors, and (2) Malibu fails to allege a violation of predicate law to establish a claim under the UCL's "unlawful" prong. (Mot. 20–21.)  However, as Malibu fails to establish an entitlement to equitable remedies, the Court need not reach these additional arguments and declines to do so.

providing."   (Opp'n 16.)    For the following reasons, the Court agrees with AmeriHealth.

First, Malibu fails to plausibly allege it lacks an adequate remedy at law for "compensation and damages" outside of the damages it already seeks through its other claims.   "[T]o state a UCL claim, a plaintiff must plead that legal remedies are inadequate."   *Cal. Surgical Inst., Inc. v. Aetna Life & Cas. (Bermuda) Ltd.*, No. SACV 18-02157-JVS (DFMx), 2019 WL 1581415, at *8 (C.D. Cal. Feb. 6, 2019).   This is because "[r]emedies under the UCL are limited to restitution and injunctive relief, and do not include damages."   *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, No. SACV 11-01197-CJC (ANx), 2012 WL 13028094, at *2 (C.D. Cal. Apr. 4, 2012) (citing *Korea Supply Co. v. Lockheed Martin*, 29 Cal. 4th 1134, 1146–49 (2003)). "[T]he UCL is not an all-purpose substitute for a tort or contract action."   *Korea Supply*, 29 Cal. 4th at 1150 (internal quotation marks omitted).   In this case, the FAC contains no allegation that legal remedies are inadequate.   (*See* FAC ¶¶ 94–106). Moreover, Malibu fails to allege facts establishing a theory of restitution because "Malibu is not seeking the return of any money or property it paid or gave to AmeriHealth."   (Mot. 20 n.7.)   And "nonrestitutionary disgorgement of profits is not an available remedy in an individual action under the UCL."   *Korea Supply*, 29 Cal. 4th at 1152.     Thus, Malibu's UCL claim fails to the extent Malibu seeks "compensation and damages" from AmeriHealth.

Second, Malibu fails to allege facts showing it is entitled to injunctive relief because "[b]oth the FAC and the [O]pposition fail to present a threat of ongoing future conduct, as neither asserts facts indicating that the alleged wrongful conduct extended beyond the . . . denial of coverage which forms the basis for this suit."   *Silvercrest Realty*, 2012 WL 13028094, at *3; (*see generally* FAC; Opp'n 16).    Indeed, "[i]njunctive relief is appropriate only when there is a threat of continuing misconduct."   *Madrid v. Perot Sys.*, 130 Cal. App. 4th 440, 463 (2005).   "A plaintiff may not simply state a claim for relief under [s]ection 17200 by requesting an

injunction to prevent a defendant from continuing not to do something." *Silvercrest Realty*, 2012 WL 13028094, at *3. Here, "[n]o continuing activity by [AmeriHealth] is alleged that is sufficient to merit injunctive relief." *Id.* Accordingly, Malibu's claim for injunctive relief under the UCL fails as well.

For these reasons, AmeriHealth's Motion is **GRANTED** as to Malibu's first claim. Although it seems unlikely Malibu can rectify these deficiencies, the Court cannot say that *any* amendment would be futile. *See Manzarek*, 519 F.3d at 1031. Thus, Malibu's first claim is **DISMISSED with leave to amend**.

**B.     Breach of Written Contract (Claim Two)**

Malibu's second claim is for breach of written contract, premised on Defendants' alleged breaches of the written Confirmations. (FAC ¶¶ 107–39.) AmeriHealth moves to dismiss this claim on the basis that the Confirmations Magellan sent to Malibu cannot constitute contracts because they did not contain payment terms, and each Confirmation "specifically advise[d] that it is not a guarantee of payment and that payment is subject to a number of conditions." (Mot. 13–14.) In its Opposition, Malibu did not respond to AmeriHealth's claims that its breach of written contract claim is deficiently pleaded. (*See* Opp'n; *see also* Reply 16 n.2).

Courts in this district have found that a failure to address an argument in opposition to a motion to dismiss constitutes a concession of that argument. *See, e.g.*, *ABC Servs. Grp., Inc. v. Health Net of Cal., Inc.*, No. SACV 19-00243-DOC (DFMx), 2020 WL 2121372, at *5 (C.D. Cal. May 4, 2020) (citing *Johnson v. Macy*, 145 F. Supp. 3d 907, 918 (C.D. Cal. 2015)). In this instance, the Court finds that, by failing to meaningfully respond to AmeriHealth's argument, Malibu has effectively conceded the issue as to whether its breach of written contract claim is adequately pled. Pursuant to Local Rules 7-9 and 7-12,[6] the Court construes Malibu's failure to address

---

[6] Under the Court's Local Rules, a non-moving plaintiff must file an opposition brief at least twenty-one days prior to the date designated for the hearing of a motion to dismiss a complaint. C.D. Cal. L.R. 7-9. And the failure to file any required document—e.g., an opposition—within the deadline "may be deemed consent to the granting . . . of the motion." C.D. Cal. L.R. 7-12.

1  those specific grounds raised in the Motion as consenting to dismissal on those

2  grounds.  *See New Day Worldwide Inc. v. Swift*, No. CV 19-09948-AB (SSx),

3  2020 WL 6050700, at *2 (C.D. Cal. July 21, 2020).

4       Moreover, Malibu appears to expressly concede that the Confirmations do not

5  constitute contracts themselves.  (*See* Opp'n 7 ("As the FAC notes, the oral contract

6  created on the pre-authorization calls was confirmed by subsequent letters, not created

7  by those letters." (citing FAC ¶¶ 44–77)).)  Accordingly, AmeriHealth's Motion is

8  **GRANTED** as to Malibu's second claim.  Furthermore, the Court finds that any

9  further amendment would be futile, as Malibu concedes the Confirmations do not in

10  and of themselves constitute written contracts.  Thus, Malibu's second claim for

11  breach of written contract is **DISMISSED with prejudice** insofar as it is premised on

12  the Confirmations as written contracts.

13  **C.  Breach of Oral Contract (Claim Three)**

14       Malibu's third claim is for breach of oral contract, based on "numerous, and

15  lengthy, authorization and utilization review calls" that occurred between Malibu and

16  Defendants, the details of which are allegedly reflected in the numerous

17  Confirmations.  (FAC ¶¶ 152–54.)  AmeriHealth moves to dismiss this claim because

18  the FAC fails to provide any details or specifics about any calls, except for the initial

19  VOB call.  (Mot. 14).  In opposition, Malibu argues that AmeriHealth "grossly

20  mischaracterizes a vital element of Plaintiff's argument because it neglects the fact

21  that Plaintiff's legal theory is based on prior authorization *Calls*, which the

22  [Confirmations] then *confirm . . . .*"  (Opp'n 7.)  Notwithstanding Malibu's legal

23  theory, however, the Court agrees with AmeriHealth.

24       "To state a claim for breach of contract under California law, a plaintiff must

25  plead: (1) the existence of the contract; (2) plaintiff's performance or excuse for

26  nonperformance of the contract; (3) defendant's breach of the contract; and (4)

27  resulting damages."  *First Class Vending, Inc. v. ITC Sys. (USA), Inc.*, No. CV 12-

28  2342-ODW (PLAx), 2012 WL 2458131, at *2 (C.D. Cal. June 26, 2012) (citing

*Reichert v. Gen. Ins. Co. of Am.,* 68 Cal. 2d 822, 830 (1968)). "[T]o establish the existence of an oral or implied contract, a party must assert facts that show an agreement between the parties." *Id.* (citing *Div. of Lab. L. Enf't v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268, 275 (1977)). The only distinction between an oral and an implied contract is that in the former, the obligations are expressed in words, rather than implied from the parties' conduct. *See id.*

Here, Malibu fails to adequately plead the existence of numerous oral agreements, even if they were allegedly confirmed by the Confirmations. In the FAC, Malibu alleges that "[t]he numerous, and lengthy, authorization and utilization review calls *set forth above* form the basis of the oral contract between the parties," (FAC ¶ 152 (emphasis added)), and that "detailed calls and authorizations *described above* constitute the oral representations made between the parties," (*id.* ¶ 144 (emphasis added)). However, the only details of any phone call mentioned in the FAC "above" the allegations cited here relate to a single call—the initial VOB call of January 6, 2016. (*See id.* ¶¶ 39–42). If, as Malibu contends, its legal theory is based on numerous oral contracts entered into over the course of numerous utilization calls with Magellan or AmeriHealth, it must provide notice of those calls, and their content, to AmeriHealth. Because Malibu fails to do so in its FAC, AmeriHealth's Motion is **GRANTED** as to Malibu's third claim. Because the Court cannot say that any amendment would be futile, *see Manzarek*, 519 F.3d at 1031, Malibu's third claim is **DISMISSED with leave to amend**.

**D.   Breach of Implied Contract (Claim Four)**

Malibu's fourth claim is for breach of implied contract, based on an alleged course of conduct established between the parties throughout the first half of 2016, during which AmeriHealth paid Malibu for services provided to LK based on the VOB call and preauthorization communications.[7]   (FAC ¶¶ 171–89.)   AmeriHealth

---

[7] Malibu brings its fourth claim in the alternative to its breach of oral contract claim. (*See* FAC ¶¶ 173–75.) "There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time." *Cal. Surgery Ctr., Inc. v. UnitedHealthcare, Inc.*,

moves to dismiss this claim on the ground that "communications related to verifications of benefits and prior authorizations do not give rise to an implied-in-fact contract because there is no mutual assent to contract." (Mot. 16). Malibu correctly argues in response, however, that verification and authorization communications *can* constitute a sufficient predicate for a breach of contract claim, depending on circumstances. (Opp'n 8–11.)

As mentioned above, the only distinction between an oral and an implied contract is that in the latter, the obligations are implied from the parties' conduct, rather than expressed in words. *First Class Vending*, 2012 WL 2458131, at *3. In either case, preauthorization or verification calls *alone* are not enough to create a contract because, "within the medical insurance industry, an insurer's verification is not the same as a promise to pay." *Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000); *see, e.g.*, *Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 216 (2017) (finding no implied contract based on preauthorization and statements that provider "would be paid" where "there [wa]s no indication in the FAC what exactly [the insurer] agreed to pay"). However, where a plaintiff does allege what type of treatment was being sought, how long the course of treatment was expected to last, an agreement on a specific billing rate pegged to a percentage of the UCR, and that in each follow-up the insurer confirmed the payment would be made at the previously agreed-upon rate, the allegations are sufficient to plead a plausible claim under Rule 8(a). *See Bristol SL Holdings, Inc. v. Cigna Health Life Ins. Co.*, No. SACV-19-00709-AG (ADSx), 2020 WL 2027955, at *3 (C.D. Cal. Jan. 6, 2020) (finding such allegations sufficient to state a plausible claim).

---

No. CV-19-02309-DDP (AFMx), 2020 WL 3869715, at *4 (C.D. Cal. July 9, 2020) (quoting *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975)). A plaintiff can, however, plead inconsistent allegations in the alternative if he has a reasonable belief that each of the theories pleaded is legally tenable. *See Crowley v. Katleman*, 8 Cal. 4th 666, 678, 691 (1994).

Here, Malibu has pleaded sufficient facts to sustain an implied contract claim. Malibu alleges that prior to admitting LK to its treatment facility, it "confirmed with agents of AmeriHealth that LK was eligible for applicable behavioral health benefits." (FAC ¶ 39.)  Malibu further alleges that January 6, 2016 VOB call, "AmeriHealth's agent promised and informed Malibu that it would be paid for behavioral health services at 90% of UCR (90% of billed charges) until LK's out-of-pocket maximum had been met, at which point AmeriHealth would pay 100% of UCR (100% of billed charges)."  (FAC ¶ 42.)  Malibu alleges that it rendered services based on those representations, (FAC ¶¶ 48–77, 186), and that, for each of these treatments, the specified rate as a percentage of the UCR was incorporated in each subsequent authorization, (FAC ¶¶ 131–32).  Malibu attaches the Confirmations to its FAC, which show, in each case: what additional treatment was authorized, for how long it was authorized, and that it was authorized "at the out of network level of benefit." (*See* Confirmations).  Finally, Malibu alleges that the two parties established a course of dealing—as evidenced by the fact that AmeriHealth paid Malibu for LK's treatment from January 1, 2016 until June 1, 2016—based on the VOB call and subsequent preauthorizations.  (FAC ¶¶ 180–85.)  These allegations satisfy the notice pleading requirements of Rule 8(a) and plausibly establish the existence of implied contracts. Accordingly, AmeriHealth's Motion is **DENIED** as to Malibu's fourth claim for breach of implied contract**.**

**E.    Promissory Estoppel (Claim Five)**

Malibu's fifth claim is for promissory estoppel.    (FAC  ¶¶ 190–203.) AmeriHealth moves to dismiss this claim on the ground that Malibu fails to allege a clear and unambiguous promise.[8]  (Mot. 17–18.)  In opposition, Malibu explains it "does not base [this claim] on promises made in the insurance contracts, but rather the promises made in the verification and authorization communications."  (Opp'n 12

---

[8] AmeriHealth also argues that Malibu fails to show reasonable reliance.  (Mot. 18.)  However, because Malibu fails to plead clear and unambiguous promises upon which a claim for promissory estoppel can be based, the Court need not reach this additional argument and declines to do so.

1    (citing FAC ¶ 158).)   Even accepting Malibu's theory of estoppel, AmeriHealth is
2    correct.

3           California law requires four elements to establish promissory estoppel: "(1) a
4    promise clear and unambiguous in its terms; (2) reliance by the party to whom the
5    promise is made; (3) [the] reliance must be both reasonable and foreseeable; and
6    (4) the party asserting the estoppel must be injured by his reliance."   *Aceves v. U.S.*
7    *Bank, N.A.*, 192 Cal. App. 4th 218, 225 (2011).   An actionable promise must not only
8    be "clear and unambiguous in its terms," but also cannot be based on preliminary
9    discussions.   *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1044 (2010).

10          Here, Malibu alleges Defendants sent numerous Confirmations, each of which
11   confirmed authorization of a given scope of treatment and "provided [a] unique
12   confirmation number to confirm prior approval of these services."   (FAC ¶¶ 48–77;
13   *see also* Confirmations.)   Malibu also alleges in conclusory fashion that it "executed a
14   series of binding pre-authorizations" that were performed by Magellan, (FAC ¶ 44),
15   and that it "rendered services with explicit authorization from Defendants and with the
16   understanding that rates would be paid at the amount agreed to on the initial VOB
17   phone call," (*id.* ¶ 46).   Noticeably absent among these allegations, however, is the
18   identification of any clear and unambiguous promise, never mind a great series of
19   continuing promises.   To be fair, Malibu does allege that "during utilization review
20   (UR) calls, [Defendants] promised to pay Malibu a specific percentage of UCR."   (*Id.*
21   ¶ 198.)   However, the Court need not accept this merely conclusory allegation as true
22   absent any supporting factual allegations to satisfy the minimum plausibility standard.
23   *See Iqbal*, 556 U.S. at 67; *Sprewell*, 266 F.3d at 988.   As explained above, Malibu
24   fails to allege sufficient details of the supposedly numerous and lengthy utilization
25   calls. (*See* Part IV(C), *supra*.)   Accordingly, the Court finds that Malibu fails to plead
26   the clear and unambiguous promises upon which its claim for promissory estoppel is
27   supposedly based, and AmeriHealth's Motion is **GRANTED** as to Malibu's fifth
28   claim.   Because the Court cannot say that any amendment would be futile, *see*

1  *Manzarek*, 519 F.3d at 1031, Malibu's fifth claim is **DISMISSED with leave to**
2  **amend**.

3  **F.      Fraudulent Inducement (Claim Six)**

4         Malibu's sixth claim is for fraudulent inducement, based on a theory that
5  "AmeriHealth clearly decided it would no longer pay LK's claims while continuing to
6  represent to Malibu [through Magellan] that they would," (FAC ¶ 211), and
7  "AmeriHealth knew that it would not pay Malibu's invoices despite representations
8  that it would do so," (*id.* ¶ 212).  AmeriHealth moves to dismiss this claim because
9  "Malibu fails to plead the cause of action with any particularity," such as "who, either
10 at AmeriHealth or acting on its behalf, made the representations." (Mot. 19.)  Malibu
11 counters that its FAC meets the heightened standard of Rule 9(b).  (Opp'n 13.)  But
12 the Court agrees with AmeriHealth.

13        In   California,   "[t]he   elements   of   fraudulent   inducement   are
14 (1) misrepresentation;  (2) knowledge  of  its  falsity;  (3) intent  to  induce  reliance;
15 (4) justifiable reliance; and (5) damages." *Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d
16 1075, 1087 (C.D. Cal. 2017), *aff'd*, 747 F. App'x 643 (9th Cir. 2019) (citing *City*
17 *Sols., Inc. v. Clear Channel Commc'ns.*, 365 F.3d 835, 839 (9th Cir. 2004)).  In
18 alleging fraud, the claims require more specificity than the *Twombly-Iqbal* pleading
19 standard.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state
20 with  particularity  the  circumstances  constituting  fraud  or  mistake.").   To  satisfy
21 Rule 9(b), a plaintiff must include "the who, what, when, where, and how" of the
22 fraud.  *Armijo  v.  ILWU-PMA  Welfare  Plan*,  No. CV-15-01403-MWF  (VBKx),
23 2015 WL 13629562, at *25 (C.D. Cal. Aug. 21, 2015).  Additionally, reference to an
24 "agent"  or  "employee"  is  not  enough;  the  pleading  must  identify  a  particular
25 individual.  *Bristol*, 2020 WL 2027955, at *5; *see also Glen Holly Ent., Inc. v.*
26 *Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).

27        Here, Malibu contends its fraudulent inducement claim meets the heightened
28 standard of Rule 9(b) because the FAC includes "an account of the time, place, and

specific content of the false representations as well as the identities of the parties to the misrepresentations."  (Opp'n 13.)  But Malibu's position is untenable because, as already discussed, the FAC does not provide any details about the alleged conversations.  (*See* Parts IV(C), IV(E), *supra*.)  Malibu does not identify who repeatedly promised to pay for LK's treatments, nor does it identify where, when, why, or how such representations were allegedly conveyed.  (*See* FAC ¶¶ 44–77.)  In its Opposition, Malibu asserts, "As alleged in the FAC, [Malibu] *has* reference numbers, agent names, and call notes for its countless calls to AmeriHealth during which AmeriHealth misrepresented intent to pay Malibu for services."  (Opp'n 13 (emphasis added) (citing FAC ¶¶ 45–46).)  Whether Malibu "has" such information is beside the point, as none of those details are alleged in the FAC.  Thus, the Court finds that Malibu's fraudulent inducement claim falls short of Rule 9(b)'s specificity requirements, and AmeriHealth's Motion is therefore **GRANTED** as to Malibu's sixth claim.  As the Court cannot say any amendment would be futile, *see Manzarek*, 519 F.3d at 1031, Malibu's sixth claim is **DISMISSED with leave to amend**.

## G.   Open Book Account (Claim Seven)

Malibu's seventh claim is an open book account claim, based on a theory that Malibu and Defendants "had financial transactions recorded as patient healthcare claims, and [Malibu] kept an account of the debits and credits involved in these transactions."  (FAC ¶ 219.)  AmeriHealth moves to dismiss on the grounds that (1) the allegations fail to show that the parties intended to be bound by a book account, and (2) because Malibu alleges that each preauthorization was a separate contract, they cannot be viewed as a connected series of transactions where there is but one single and indivisible liability.  (Mot. 21–22.)  In opposition, Malibu argues that "[t]he entire nature of medical billing for chronic conditions is premised on an open-book relationship whereby payments are made incrementally for distinct but related care," and "[t]he nature of the ongoing contractual relationship between

AmeriHealth and Malibu depended upon an open book system to function efficiently." (Opp'n 16–17.)  The Court finds AmeriHealth's arguments persuasive.

A book account is:

> [A] detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract or some fiduciary relation, [which] shows the debits and credits in connection therewith, and against whom and in favor of whom entries are made, . . . entered in the regular course of business as conducted by such creditor or fiduciary, and . . . kept in a reasonably permanent form and manner.

Cal. Civ. Proc. Code § 337a.  Importantly, "[a] book account is created by the agreement or conduct of the parties in a commercial transaction."  *H. Russell Taylor's Fire Prevention Serv., Inc. v. Coca Cola Bottling Corp.*, 99 Cal. App. 3d 711, 728 (1979).  If there is "no evidence of an agreement" between the parties to form a book account, and if the parties' conduct does not "show that they intended or expected such an account would be created," then "there is insufficient evidence to support the finding of an open book account."  *Maggio, Inc. v. Neal*, 196 Cal. App. 3d 745, 752 (1987).  To state a claim for an open book account, a plaintiff must show:

> [T]he parties *intend* that the individual items of the account shall not be considered independently, but as a connected series of transactions, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits and credits are made, until it shall suit the convenience of either party to settle and close the account, and where, pursuant to the original express or implied intention, there is but one single and indivisible liability arising from such series of related and reciprocal debits and credits.

*R.N.C., Inc. v. Tsegeletos*, 231 Cal. App. 3d 967, 972 (1991) (emphasis added).

Here, Malibu fails to plead that the parties intended to be bound by an open book contract.  Malibu merely alleges that "in the course of their dealings," it "kept an account of the debits and credits involved in these transactions," and that AmeriHealth therefore owes Malibu money on an open book account totaling $394,985.  (FAC

¶¶ 219–20; *see also* FAC Ex. C ("Account Spreadsheet"), ECF No. 48-3).[9]   These allegations do not demonstrate that AmeriHealth committed itself to a book account. *See Maggio, Inc.*, 196 Cal. App. 3d at 752 ("[M]ere incidental keeping of accounts does not alone create a book account."); *Avanguard Surgery Ctr., LLC v. Cigna Healthcare of Cal., Inc.*, No. 2:20-CV-03405-ODW (RAOx), 2020 WL 5095996, at *6 (C.D. Cal. Aug. 28, 2020) (dismissing an open book claim where the complaint failed to allege the defendant intended to be bound by a book account).   In fact, AmeriHealth's conduct of paying for services rendered for the first half of 2016, (FAC ¶ 80), supports the inference that AmeriHealth did *not* intend to treat the account as one "kept open and subject to a shifting balance as additional related entries of debits and credits are made, until it shall suit the convenience of either party to settle and close the account," *R.N.C.*, 231 Cal. App. 3d at 972.   Thus, the Court finds Malibu fails to allege facts showing AmeriHealth agreed to be bound by a book account. Consequently, AmeriHealth's Motion is **GRANTED** as to Malibu's seventh claim. Although it seems unlikely Malibu can rectify this deficiency, the Court cannot say that *any* amendment would be futile.   *See Manzarek*, 519 F.3d at 1031.   Accordingly, Malibu's seventh claim is **DISMISSED with leave to amend**.

**H.     Breach of Written Contract, As Assignee & Attorney-in-Fact (Claim Eight)**

Finally, Malibu brings its eighth claim in its own name as assignee and attorney-in-fact, for breach of written contract based on Defendants' alleged breach of LK's Policy.   (FAC ¶¶ 221–37.)   AmeriHealth moves to dismiss this claim under Rule 12(b)(1) for lack of standing, on the bases that (1) the Policy contains an anti-assignment provision, and Malibu fails to allege AmeriHealth's consent to the Assignment; and (2) an attorney-in-fact cannot sue on its own behalf for its own

---

[9] The Court notes that the Account Spreadsheet submitted as Exhibit C to the FAC contains no dates or descriptions of treatment; it is merely a collection of numbers purportedly reflecting the cumulative costs of LK's treatments.   (*See generally* Account Spreadsheet.)

benefit.[10]  (Mot. 10–11.)  In opposition, Malibu argues that (1) AmeriHealth waived the anti-assignment provision by failing to previously raise it as a reason to deny LK's claims, and (2) despite AmeriHealth's arguments, the valid power of attorney permits it to bring suit as LK's attorney-in-fact.  (Opp'n 3–7.)  Malibu's arguments once again miss the mark.

### 1.    *Anti-Assignment Provision*

First, the Policy states, "No assignment or transfer by the Policyholder of any of the Policyholder's interests under this Policy or by a Covered Person of any of his or her interest under this Policy is valid unless [AmeriHealth] consent[s] thereto." (Policy 71.)  AmeriHealth argues that, under New Jersey law,[11] this anti-assignment provision defeats Malibu's standing to bring a claim for breach of the Policy because Malibu fails to allege that AmeriHealth consented to the Assignment.  (Mot. 10.)  In opposition, Malibu argues that the allegations *are* sufficient to show a waiver of the anti-assignment clause because it alleges that AmeriHealth paid Malibu during the first half of 2016 based on the Assignment, and AmeriHealth never raised the anti-assignment clause as a grounds for later denying claims for LK's treatment.  (Opp'n 4 (citing FAC ¶¶ 222–37).)

"[A] party can waive an anti-assignment provision via a written instrument, a course of dealing, or even passive conduct, i.e., taking no action to invalidate the assignment vis-a-vis the assignee."  *Med-X Glob., LLC v. Azimuth Risk Sols., LLC*, No. 17-13086, 2018 WL 1726264, at *4 (D.N.J. Apr. 10, 2018) (citing cases) (internal quotation marks omitted).  For instance, "an administrator may not hold in reserve a

---

[10] AmeriHealth also moves to dismiss this claim under Rule 12(b)(6).  However, because the Court concludes Malibu lacks standing to bring this claim, it need not reach this additional argument and declines to do so.

[11] The parties disagree as to whether New Jersey or California law governs the Policy, but neither party substantively addresses the issue in its briefs, instead relegating the entirety of the argument to competing footnotes.  (*See* Mot. 10 n.2; Opp'n 4 n.1; Reply 6 n.2.)  As neither party suggests, and it does not appear, that the Court's disposition turns on which law applies, the Court assumes without deciding that New Jersey law governs the Policy.  (*See* Policy 72 ("This entire Policy is governed by the laws of the State of New Jersey.").)

known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014); *see, e.g.*, *Cal. Spine & Neurosurgery Inst. v. Blue Cross of Cal.*, 811 F. App'x 429, 429–30 (9th Cir. 2020) (reversing district court's finding of no waiver where plaintiff alleged it "submitted a reimbursement claim to [the insurer] *indicating it was acting as the member's assignee*, and [the insurer] partially denied the claim on a basis other than the anti-assignment provision" (emphasis added)). Importantly, however, "a waiver must be knowing, voluntary, and intentional, as demonstrated by the circumstances." *Med-X*, 2018 WL 1726264, at *4 (quoting *Univ. Spine Ctr. v. Aetna Inc.*, No. 17-8160 (KM), 2018 WL 1409796, at *6 (D.N.J. Mar. 20, 2018)).

Here, Malibu has not alleged that AmeriHealth was aware, either at the time of treatment or during the appeals process, that Malibu was acting as LK's assignee. (*See generally* FAC.)  Without that knowledge, AmeriHealth could not have waived its objection to the assignment.  *See, e.g.*, *Spinedex*, 770 F.3d at 1297 ("[T]here is no evidence that [the insurer] was aware, or should have been aware, during the administrative process that [the service provider] was acting as its patients' assignee.").  Notably, Malibu argues in its Opposition that AmeriHealth must have known Malibu was seeking payment as LK's assignee because "AmeriHealth *required* benefits be assigned as a claims processing policy." (Opp'n 6.)  But this allegation— as well as any other allegation indicating that AmeriHealth knew or should have known about the Assignment—is simply absent from the FAC.  Accordingly, the Court finds Malibu has not alleged sufficient facts to show that AmeriHealth waived the valid anti-assignment provision.  And as Malibu fails to allege waiver of the anti-assignment provision, its eighth claim must be dismissed to the extent it is brought as an assignee.  *See Somerset Orthopedic Assocs., P.A. v. Horizon Blue Cross & Blue Shield of N.J.*, 785 A.2d 457, 465 (N.J. Super. Ct. App. Div. 2001) (holding

anti-assignment clause "valid and enforceable to prevent assignment by subscribers of policy benefit payments to non-participating medical providers without [insurer]'s consent"); *Quemetco Inc. v. Pac. Auto. Ins. Co.*, 24 Cal. App. 4th 494, 502–03 (1994) (enforcing anti-assignment provision requiring insurer's consent to assignment).

### 2. Attorney-in-Fact

Alternatively, Malibu asserts it has the right to sue on its own behalf under the Policy as LK's attorney-in-fact. (Opp'n 6; FAC ¶ 223, 234, 237). But Malibu is wrong. "The grant of a power of attorney is not the equivalent of an assignment of ownership and does not enable the grantee to bring suit in [its] own name." *Universal Trading & Inv. Co. v. Kiritchenko*, No. C-99-3073 MMC, 2007 WL 2669841, at *21 (N.D. Cal. Sept. 7, 2007) (internal quotation marks and alterations omitted) (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 12–18 (2d. Cir. 1997)). Here, Malibu brings its eighth claim in its own name, which it cannot do based solely on the POA executed by LK. Accordingly, to the extent this claim is brought as LK's attorney-in-fact, it must be dismissed with prejudice.

In short, Malibu lacks standing to assert its eighth claim because it (1) fails to sufficiently plead that AmeriHealth waived the Policy's anti-assignment provision, and (2) cannot litigate for its own benefit as LK's attorney-in-fact. Therefore, the Court **GRANTS** AmeriHealth's Motion as to Malibu's eighth claim. Because the Court cannot say that any amendment would be futile as to the issue of waiver and assignment, *see Manzarek*, 519 F.3d at 1031, Malibu's eighth claim is **DISMISSED with leave to amend**. However, this claim is **DISMISSED with prejudice** insofar as it is brought in Malibu's own name as LK's attorney-in-fact.

### V. CONCLUSION

In summary, AmeriHealth's Motion (ECF No. 38) is **GRANTED in part** and **DENIED in part**. The request to dismiss Malibu's fourth claim for breach of implied contract is **DENIED**. Malibu's second claim for breach of written contract premised on the Confirmations is **DISMISSED with prejudice**. Malibu's first, third, fifth,

sixth, seventh, and eighth claims are **DISMISSED with leave to amend**, except that Malibu's eighth claim is **DISMISSED with prejudice** insofar as it is brought in Malibu's own name as LK's attorney-in-fact.

To the extent the Court grants leave to amend, Malibu may file a Second Amended Complaint curing the deficiencies identified above within **fourteen (14) days** of the date of this Order.  If Malibu files an amended complaint, Defendants must file their response(s) in accordance with Rule 15(a)(3).  If Malibu does not amend, AmeriHealth must file its answer to the FAC within **thirty-five (35) days** of the date of this Order.

**IT IS SO ORDERED.**

Date**:** December 23, 2020

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE