O

# United States District Court
# Central District of California

| | |
|---|---|
| MALIBU BEHAVIORAL HEALTH SERVICES INC., <br><br> Plaintiff, <br><br> v. <br><br> MAGELLAN HEALTHCARE, INC., et al., <br><br> Defendants. | Case No. 2:20-cv-1731-ODW (PVCx) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS SECOND AMENDED COMPLAINT [63] [64]** |

## I.  INTRODUCTION

This action arises from a payment dispute between a medical services provider and an insurer.  Plaintiff Malibu Behavioral Health Services, Inc., d/b/a South California Road to Recovery ("Malibu") brings a Second Amended Complaint ("SAC") against Defendants AmeriHealth Insurance Company of New Jersey ("AmeriHealth") and AmeriHealth's agent, Magellan Healthcare, Inc. ("Magellan"), seeking $394,985 for unpaid medical services Malibu provided its patient, "LK."  (*See* SAC, ECF No. 60.)

AmeriHealth and Magellan have filed separate Motions to Dismiss the SAC. (AmeriHealth Mot., ECF No. 63; Magellan Mot., ECF No. 64.)  Both Motions are

fully briefed. (*See* Opp'n AmeriHealth Mot., ECF No. 67; AmeriHealth Reply, ECF No. 68; Opp'n Magellan Mot., ECF No. 69; Magellan Reply, ECF No. 70.) For the following reasons, both Motions are **GRANTED in part** and **DENIED in part**.[1]

## II. BACKGROUND[2]

Malibu is a private rehabilitation center in Riverside, California. (SAC ¶ 15.) Along with medication-assisted treatment, it offers detoxification, residential treatment, partial hospitalization, and intensive outpatient services to patients. (*Id.*) From January 3, 2016, to December 31, 2016, Malibu provided LK covered treatment for mental health and substance use disorders. (*Id.* ¶¶ 44, 164–67.) During this period, AmeriHealth insured LK under its New Jersey POS Plus policy (the "Policy"), providing out-of-network coverage to services like Malibu's. (*Id.* ¶¶ 7, 33, 39; *see* Policy, ECF No. 38-1.)[3] Magellan, acting as AmeriHealth's agent, had exclusive control over benefits decisions, utilization management, and claims handling related to LK's treatment at Malibu. (*Id.* ¶¶ 18–19.)

On December 29, 2015, prior to treating LK, Malibu's Verification of Benefits ("VOB") Team called AmeriHealth using the phone number on LK's insurance card. (*Id.* ¶ 47.) A representative named Sierra answered and verified that LK had active coverage for 2016. (*Id.* ¶ 48.) Sierra explained that once LK met her $3,000 deductible for out-of-network providers, AmeriHealth would pay, in exchange for the provision of services, benefits at 70% of a "usual, customary and reasonable rate"

---

[1] After carefully considering the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] For purposes of these Rule 12 Motions, the Court takes all of Plaintiffs' well-pleaded allegations as true. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

[3] "Certain written instruments attached to pleadings may be considered part of the pleading." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing Fed. R. Civ. P. 10(c)). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* "[T]he district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.* Here, the Court considers the Policy as incorporated by reference into the FAC because Malibu refers extensively to the Policy, and the Policy forms a substantial basis for Malibu's claims. (*See generally* FAC.)

("UCR"). (*Id.*) And once LK met her annual out-of-pocket maximum, AmeriHealth would pay benefits at 100% of the UCR. (*Id.*) Malibu claims the UCR was understood as the rate Malibu billed. (*Id.*) Malibu also asked questions about whether any exclusions or conditions applied and whether certain specific services were covered. (*Id.* ¶ 49.) Sierra answered Malibu's questions and stated that the only conditions of payment for services would be LK's payment of premiums and Malibu's receipt of authorization from Magellan. (*Id.*) Sierra then provided the phone number for requesting authorizations from Magellan. (*Id.*)

On December 30, 2015, Malibu made a second VOB call to confirm with "absolute certainty" that it would be paid in exchange for providing services. (*Id.* ¶ 51.) In the second call, Malibu spoke with an AmeriHealth representative named Tiffany T. (*Id.*) Tiffany reconfirmed the representations Sierra made on the first call: that the only conditions of payment to Malibu were LK's payment of premiums and Magellan's authorization. (*Id.* ¶¶ 52–53.) Tiffany also stated that the right to payment was assignable and that AmeriHealth would pay Malibu directly if LK assigned her benefits. (*Id.* ¶ 54.) Tiffany T. then stated that claims were to be submitted directly to AmeriHealth at its electronic "Payor ID," 54704. (*Id.*)

On January 4, 2016, the day Malibu began treating LK, Malibu called Magellan and spoke to AmeriHealth's agent, Brenda, to provide diagnosis codes for LK. (*Id.* ¶¶ 44, 164–67, 73.) Brenda communicated that she agreed LK needed care and that Malibu was entitled to payment for rendering detoxification services to LK during January 3–7, 2016. For the rest of the year, Malibu continued calling Magellan to receive authorizations to treat LK with different types of services. (*Id.* ¶¶ 74–115.) Each time Malibu wanted to receive authorization from Magellan, it followed a repeated sequence. First, Malibu would call Magellen to receive verbal authorization to treat LK. (*Id.*) Malibu would provide updated clinical information, and Magellan would inform Malibu it was entitled to payment if it provided LK an additional number of days of treatment, along with a reference number. (*Id.*; *see generally* SAC

Ex. B, ECF No. 60-2). Malibu claims that when it called Magellan for authorization, it understood that the authorizations were conditions precedent to AmeriHealth's payments. (SAC ¶ 64.)

A number of days after each call, Magellan would send a written confirmation by mail, often after services had already been rendered. (*Id.* ¶¶ 58–59, 116–47; *see also* SAC Ex. C ("Confirmations") ECF No. 60-3.) Malibu claims that the Confirmations reinforced its belief that it would continue to be paid, as promised, as long as the letters were issued. (SAC ¶¶ 116–18.) Notably, each Confirmation included the following disclaimer:

> Please note that this authorization is not a determination of eligibility or a guarantee of payment. Coverage and payment are subject to the member's eligibility at the time services are provided, and the benefits, limitations, exclusions and other specific terms of the health benefit plan at the time services are provided. The member may be responsible for charges incurred for unauthorized services or for applicable pre-certification penalties. If the member is receiving services from a non-participating provider, the member may have significant higher out-of-pocket expenses than if services are provided by a participating provider.

(*See, e.g.*, Confirmations at 2.) Notwithstanding these disclaimers, Malibu alleges that it rendered services in reliance upon Magellan's verbal authorizations and authorization numbers. (*See, e.g.*, SAC ¶ 86.)

Malibu submitted claims to AmeriHealth in a timely fashion on a form known as a "UB-04," which is a universally accepted billing form for services rendered by facilities like Malibu. (*Id.* ¶ 148.) Malibu also checked "box 53" on the form indicating that it had been assigned LK's benefits and that AmeriHealth was on notice to treat Malibu as the assignee of the right to payment. (*Id.* ¶ 150.)

Malibu received payment from AmeriHealth for services provided to LK from January 3, 2016, through June 1, 2016.[4] (*Id.* ¶ 165.) But it did not receive payments

---

[4] Malibu contradicts itself by repeatedly stating that AmeriHealth failed to pay Malibu for services from January to June 1, 2016. (SAC ¶¶ 118–27.) Elsewhere, Malibu states that AmeriHealth did pay Malibu for services rendered from January to June 1, 2016. (*Id.* ¶ 165.) The Court construes

for services rendered from June 2, 2016 to December 31, 2016 totaling in the amount of $394,985. (*Id.* ¶ 167.) During this period from June to December 2016, Magellan continued to authorize treatment services for LK as it had been doing previously. (*Id.* ¶ 166.) Relying on these authorizations, Malibu continued to provide services to LK. (*Id.* ¶ 175.)

In mid-December 2016, Malibu realized that AmeriHealth stopped reimbursing it for LK's treatment and sought an explanation from AmeriHealth. (*Id.* ¶ 169–71.) On December 15 and 16, 2016, Malibu spoke with AmeriHealth representatives over the phone but did not receive any explanation as to why AmeriHealth stopped paying for claims. (*Id.* ¶ 174.) Rather, Malibu received verification that LK's AmeriHealth policy was still active and that LK was continuing to make monthly premium payments of $10,916.96. (*Id.* ¶ 178.) But Malibu never received payment for those unpaid claims. (*Id.* ¶ 177.)

On March 8, 2017, Malibu spoke with AmeriHealth representatives Judith B. and Michael regarding the unpaid claims. (*Id.* ¶ 178.) Michael explained that LK's Policy had *possibly* been bifurcated on June 6, 2016—without notice—and that starting on June 6, 2016, LK was insured under a different policy. (*Id.*) Malibu alleges that Michael was "vague" in his explanation. (*Id.*) Malibu later discovered that LK's policy had been rescinded based on allegations of fraud. (*Id.* ¶ 181.) AmeriHealth had concluded that LK never lived in New Jersey and purchased the Policy fraudulently. (*Id.*) AmeriHealth reached this conclusion after sending letters to LK's home in New Jersey without receiving a response. (*Id.*) However, AmeriHealth knew that LK was in California receiving treating from Malibu. (*Id.*) And during this time, AmeriHealth continued to accept premium payments from LK. (*Id.* ¶ 182.)

Based on these and other facts, Malibu asserts seven claims in its SAC for: (1) violation of California's Unfair Competition Law, California Business and

---

these claims as asserting that Malibu *was* paid between that period, given that Malibu asserts that the period at issue is for an unpaid term between June 2 to December 31, 2016. (*Id.* ¶ 164.)

Professions Code section 17200 ("UCL"); (2) breach of oral contract; (3) breach of implied contract; (4) promissory estoppel; (5) fraudulent inducement; (6) open book account; and (7) breach of written contract based on the Policy, brought has LK's assignee.[5] (*See id.* ¶¶ 188–321.) AmeriHealth and Magellan now move to dismiss all seven claims against them under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. (*See* AmeriHealth Mot.; Magellan Mot.)

### III. LEGAL STANDARD

Rule 12(b)(6) provides for dismissal of a complaint for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). But factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Testing the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings on a motion to dismiss and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 679. However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A court dismissing a complaint should provide leave to amend if the complaint could be saved by amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*,

---

[5] Before providing treatment to LK, Malibu obtained an Assignment of Benefits (the "Assignment") authorizing Malibu to collect payments directly from AmeriHealth. (SAC ¶ 8; *see* SAC Ex. A ("Assignment"), ECF No. 60-1.)

519 F.3d 1025, 1031 (9th Cir. 2008); *see also* Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave when justice so requires."). Reasons to deny leave to amend include "bad faith, undue delay, prejudice to the opposing party, and/or futility." *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (quoting *William O. Gilly Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n.8 (9th Cir. 2009)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). "[W]hen a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'" *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (failure to correct previously noted deficiencies is "a strong indication that the plaintiffs have no additional facts to plead").

## IV. DISCUSSION

Defendants move to dismiss all seven of Malibu's claims.[6] The Court addresses each in the order presented in the SAC.

### A. UCL Claim (Claim One)

First, Malibu reasserts a claim under the UCL, seeking (1) restitutionary damages and (2) an injunction prohibiting AmeriHealth from continuing to misrepresent benefits and wrongfully authorize treatment it intends to later deny. (SAC ¶¶ 198–200.) The Court previously dismissed Malibu's UCL claim with leave to amend because Malibu failed to plead (1) the inadequacy of legal remedies, which is a prerequisite to obtaining any equitable relief under the UCL, and (2) continuing misconduct, which is a prerequisite to obtaining injunctive relief. (Order Granting in Part and Denying in Part Mot. Dismiss First Am. Compl. ("First MTD Order") 7–8, ECF No. 57.) Now, AmeriHealth and Magellan move to dismiss the reasserted UCL claim for at least the same reasons. (AmeriHealth Mot. 3–5; Magellan Mot. 5–9.) The Court agrees the claim should be dismissed, as Malibu fails to cure the deficiencies of the Court's previous order.

---

[6] AmeriHealth does not challenge Malibu's third claim for breach of implied contract.

### 1. *Restitutionary Damages*

Malibu fails to establish a right to restitutionary damages. "[T]o state a UCL claim, a plaintiff must plead that legal remedies are inadequate." *Cal. Surgical Inst., Inc. v. Aetna Life & Cas. (Bermuda) Ltd.*, No. SACV 18-02157-JVS (DFMx), 2019 WL 1581415, at *8 (C.D. Cal. Feb. 6, 2019). This is because "[r]emedies under the UCL are limited to restitution and injunctive relief, and do not include damages." *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, No. SACV 11-01197-CJC (ANx), 2012 WL 13028094, at *2 (C.D. Cal. Apr. 4, 2012) (citing *Korea Supply Co. v. Lockheed Martin*, 29 Cal. 4th 1134, 1146–49 (2003)). "[T]he UCL is not an all-purpose substitute for a tort or contract action." *Korea Supply*, 29 Cal. 4th at 1150 (internal quotation marks omitted).

Here, the SAC does not contain any claims showing that legal remedies are inadequate. (*See* SAC ¶¶ 189–209.) Moreover, Malibu fails to allege facts establishing a theory of restitution because Malibu is not seeking the return of any money or property it paid or gave to AmeriHealth. (*See* AmeriHealth Mot. 4.) Malibu's claim that it was not paid for services rendered to LK does not by itself establish a restitutionary claim, nor does it show why a remedy at law is inadequate. Also, Malibu's reliance on *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163 (2000), a wage dispute regarding overtime wages governed by a California statute permitting restitution for overtime pay, is misplaced. Unlike in *Cortez*, there is no statute here dictating that Malibu is entitled to restitutionary damages or that it has "earned" anything from Defendants. *See id.* Thus, Malibu fails to allege grounds for restitution.

### 2. *Injunctive Relief*

Malibu also fails to allege facts showing it is entitled to injunctive relief. As was the case with the First Amended Complaint ("FAC"), "[b]oth the [SAC] and the opposition fail to present a threat of ongoing future conduct, as neither asserts facts indicating that the alleged wrongful conduct extended beyond the . . . denial of

coverage which forms the basis for this suit." *Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, No. SACV1101197CJCANX, 2012 WL 13028094, at *3 (C.D. Cal. Apr. 4, 2012). As previously noted, "[i]njunctive relief is appropriate only when there is a threat of continuing misconduct." *Madrid v. Perot Sys.*, 130 Cal. App. 4th 440, 463 (2005). "A plaintiff may not simply state a claim for relief under [s]ection 17200 by requesting an injunction to prevent a defendant from continuing not to do something." *Silvercrest Realty*, 2012 WL 13028094, at *3. Here, "[n]o continuing activity by [AmeriHealth] is alleged that is sufficient to merit injunctive relief." *Id.* Again, Malibu's allegations do not mention any other policies or services it rendered to any other patients insured by AmeriHealth since 2016, or whether Malibu actually treated any other patients insured by AmeriHealth. Accordingly, Malibu's claim for injunctive relief under the UCL fails.

For these reasons, Defendants' Motions are **GRANTED** as to Malibu's first claim. The Court finds that amendment would be futile, as demonstrated by Malibu's failure to amend despite having been put on notice of these deficiencies in its FAC. *See Serra*, 600 F.3d at 1200; *Zucco Partners*, 552 F.3d at 1007; *Chodos*, 292 F.3d at 1003. Accordingly, Malibu's first cause of action is **DISMISSED with prejudice**.

B.     **Breach of Oral and Implied Contract (Claims Two and Three)**

Malibu reasserts claims for breach of oral contract (claim two) and breach of implied contract (claim three). (SAC ¶¶ 116–47.) "To state a claim for breach of contract under California law, a plaintiff must plead: (1) the existence of the contract; (2) plaintiff's performance or excuse for nonperformance of the contract; (3) defendant's breach of the contract; and (4) resulting damages." *First Class Vending, Inc. v. ITC Sys. (USA), Inc.*, No. CV 12-2342-ODW (PLAx), 2012 WL 2458131, at *2 (C.D. Cal. June 26, 2012) (citing *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968)). "[T]o establish the existence of an oral or implied contract, a party must assert facts that show an agreement between the parties." *Id.* (citing *Div. of Lab. L. Enf't v. Transpacific Transp. Co.*, 69 Cal. App. 3d 268, 275 (1977)). The only

distinction between an oral and an implied contract is that in the former, the obligations are explicit from the parties verbally communicated words, rather than implied from the parties' conduct. *See id.*

Here, AmeriHealth does not challenge the breach of implied contract claim, but Magellan challenges both claims against itself because Malibu fails to allege any contract existed with Magellan. (*See* Magellan Mot. 10–12.) AmeriHealth also moves to dismiss the claim for breach of oral contract because the disclaimer language in the Confirmations reflects an intent *not* to have entered into agreements to pay. (AmeriHealth Mot. 7.) The Court addresses these arguments in turn.

### 1. Magellan's Liability for Breach of Contract

First, the Court agrees that these claims should be dismissed as to Magellan. Malibu does not allege that Magellan agreed to pay for LK's covered services, either by words or by conduct. *See Wilkes v. Elec. Data Sys. Corp.*, 267 F. App'x 661, 662 (9th Cir. 2008) ("[N]o contract to provide benefits was formed between [the plaintiff] and [the defendant], and therefore her breach of contract claim against [the defendant] must fail."). At most, Malibu alleges that Magellan acted as AmeriHealth's agent and promised that AmeriHealth would pay for LK's services. (*See, e.g.*, SAC ¶ 10.) Even assuming this is true, "this agency relationship is used to hold the insurer liable for acts of the administrator, and not vice versa." *Cedars Sinai Med. Ctr. V. Mid-West Nat'l Life Ins. Co. of Tenn.*, 118 F. Supp. 2d 1002, 1014 (C.D. Cal. 2000). That AmeriHealth may be liable for representations made by its agent, Magellan, does not necessarily obligate Magellan to cover payment itself. Because it is readily apparent from the detailed SAC that Magellan did not agree to pay Malibu from its own pockets for services provided to LK, the Court finds that further amendment of these claims against Magellan would be futile. Thus, as to Malibu's second and third

claims for breach of oral and implied contract, Magellan's Motion is **GRANTED**, and those claims as asserted against Magellan are **DISMISSED with prejudice**.[7]

### 2. *AmeriHealth's Liability for Breach of Oral Contract*

However, as to AmeriHealth, Malibu sufficiently alleges claims for breach of oral contract. Malibu alleges that it called AmeriHealth twice to confirm what was required to secure payment for services rendered to LK. (SAC ¶¶ 47–57.) Both times, AmeriHealth allegedly told Malibu that the only conditions to payment were that (1) Malibu obtain an authorization by calling Magellan, and (2) that LK continue to pay her premiums. (*Id.* ¶¶ 49, 53.) Malibu then alleges that it called Magellan numerous times and obtained such authorizations, and on those calls, Magellan (as AmeriHealth's agent) assured Malibu that it would be paid in full if it rendered particular services to LK. (*Id.* ¶¶ 64–115.) Malibu also alleges that it provided those services to LK based on those promises, (*see id.*), and LK continued to pay her premiums (*id.* ¶ 178). However, AmeriHealth did not pay Malibu. (*See, e.g.*, *id.* ¶ 5.) Thus, Malibu asserts a plausible claim for breach of oral contract. *See Cal. Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*, No. 18-CV-2867 PSG (AFM), 2018 WL 6074567, at *4 (C.D. Cal. June 28, 2018) ("The facts alleged include specific[s] . . . including that Defendant agreed to pay a specific price: 75% of the UCR rate until Patient's MOOP expense was met, and 100% of the UCR rate afterwards. . . . Plaintiff has sufficiently alleged that an oral contract was formed between the parties.")

Still, AmeriHealth points to the Confirmations, which clearly indicate that they themselves were not guarantees for payment. (AmeriHealth Mot. 7.) But Malibu's oral contract claim does not rely on the Confirmations; instead, Malibu alleges the Confirmations were sent after oral agreements had already been reached. (SAC ¶¶ 62, 116.) Essentially, Malibu claims that AmeriHealth (or its agent, Magellan) orally

---

[7] As noted below, this same reasoning supports dismissal of Malibu's fourth and seventh claims against Magellan for promissory estoppel and breach of contract brought as assignee, respectively.

promised to fully pay Malibu for services rendered to LK, then sent Malibu letters claiming that no agreement had been reached. Accepting these allegations as true, they are sufficient to state a claim for breach of oral contract. Thus, with respect to this claim, the Motions are **DENIED**.

C.     **Promissory Estoppel (Claim Four)**

Malibu reasserts a claim for promissory estoppel. (SAC ¶¶ 262–77.) California law requires four elements to establish promissory estoppel: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 225 (2011). An actionable promise must not only be "clear and unambiguous in its terms," but also cannot be based on preliminary discussions. *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1044 (2010).

With respect to Magellan, this claim fails for reasons already explained above. Nowhere does Malibu allege that Magellan promised to pay for LK's services; the allegations only show promises that AmeriHealth would pay. Thus, as to this claim for promissory estoppel, Magellan's Motion is **GRANTED**, and the claim is **DISMISSED with prejudice** to the extent it is brought against Magellan.

As for AmeriHealth, Malibu adequately states a claim for promissory estoppel. Malibu alleges that AmeriHealth and its agent, Magellan, clearly and unambiguously promised Malibu that it would be fully paid for services provided to LK, based on a rate of billing charges equal to the UCR rate for LK's treatment. (SAC ¶¶ 45–115, 266.) Malibu also alleges that it relied on those promises in treating LK, and that such reliance was reasonable and foreseeable. (*See id.* ¶¶ 266, 273.) Malibu also alleges that AmeriHealth refused to pay for those services, to Malibu's detriment. (*See id.* ¶ 274.) Thus, the elements of promissory estoppel are present. Still, AmeriHealth argues that there was no clear and unambiguous promise because no exact rates were specified, and that reliance could not have been reasonable in light of the

Confirmations. (AmeriHealth's Mot. 7–8.) But these arguments fall short. As to the former, Malibu does allege that Defendants clearly and unambiguously promised payment from AmeriHealth, based on the UCR of which all parties were aware. As to the latter, Malibu alleges that it received the Confirmations after service had been provided to LK, so at the time of reliance (i.e., when service was provided), the Confirmations were not a factor. Accordingly, with respect to Malibu's fourth claim for promissory estoppel, AmeriHealth's Motion is **DENIED**.

### D. Fraudulent Inducement (Claim Five)

Malibu reasserts a claim for fraudulent inducement, based on a theory that AmeriHealth "secretly" decided it would no longer pay LK's claims while continuing to represent to Malibu (through Magellan) that it would. (SAC ¶ 287.) The Court previously dismissed Malibu's claim for fraudulent inducement because Malibu failed to allege with sufficient particularity as required by Rule 9(b). (*See* First MTD Order 14–15.) Now, Defendants again argue that Malibu's fraud claim fails to meet the Rule 9(b) pleading standard. (AmeriHealth Mot. 8–9; Magellan Mot. 13–14.)

In California, "[t]he elements of fraudulent inducement are (1) misrepresentation; (2) knowledge of its falsity; (3) intent to induce reliance; (4) justifiable reliance; and (5) damages." *Yi v. Circle K Stores, Inc.*, 258 F. Supp. 3d 1075, 1087 (C.D. Cal. 2017), *aff'd*, 747 F. App'x 643 (9th Cir. 2019) (citing *City Sols., Inc. v. Clear Channel Commc'ns.*, 365 F.3d 835, 839 (9th Cir. 2004)). In alleging fraud, the claims require more specificity than the *Twombly-Iqbal* pleading standard. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). To satisfy Rule 9(b), a plaintiff must include "the who, what, when, where, and how" of the fraud. *Armijo v. ILWU-PMA Welfare Plan*, No. CV-15-01403-MWF (VBKx), 2015 WL 13629562, at *25 (C.D. Cal. Aug. 21, 2015). Additionally, reference to an "agent" or "employee" is not enough; the pleading must identify a particular

individual.  *Bristol*, 2020 WL 2027955, at *5; *see also Glen Holly Ent., Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).

This time, Malibu pleads with enough specificity to make a claim for fraudulent inducement.  The SAC details how AmeriHealth sent letters to LK's address in New Jersey despite knowing that LK resided in California, and how AmeriHealth used LK's non-response to those letters to rescind her Policy.  (*See* SAC ¶ 181.)  It also details how AmeriHealth then continued to accept payments for LK's premiums, and how AmeriHealth and Magellan both continued to represent to Malibu that LK's Policy was active, knowing that Malibu would then provide service to LK expecting to be paid by AmeriHealth.  (*See id.* ¶¶ 3, 66, 174, 182, 285.)  Malibu includes significant detail regarding the who, what, when, and where of each of these representations, and as already covered above, Malibu's detrimental reliance on those misrepresentations was reasonable.  Accordingly, with respect to Malibu's fifth claim for fraudulent inducement, both Motions are **DENIED**.

E.   **Open Book Account (Claim Six)**

Malibu reasserts an open book account claim but pleads virtually the same allegations it asserted in its FAC, which the Court dismissed in its previous order.  (*See* First MTD Order 15–17.)  For the same reasons stated before, the Court finds Malibu fails to allege facts showing AmeriHealth agreed to be bound by a book account.  Consequently, Defendants' Motions are **GRANTED** as to Malibu's sixth claim for open book account, which is **DISMISSED with prejudice**.  *See Zucco Partners*, 552 F.3d at 1007; *Chodos*, 292 F.3d at 1003.

F.   **Breach of Written Contract, As Assignee (Claim Seven)**

Finally, Malibu brings a claim in its own name as LK's assignee, reasserting a breach of written contract based on Defendants' alleged breach of the Policy.  (SAC ¶¶ 301–20.)  As mentioned, with respect to Magellan, Malibu fails to allege any promise that Magellan would pay for LK's treatment.  Thus, as explained, this claim is **DISMISSED with prejudice** to the extent it is asserted against Magellan.

AmeriHealth, meanwhile, moves to dismiss the claim against it on grounds that (1) Malibu still fails to allege that AmeriHealth waived the Policy's anti-assignment provision; and (2) Malibu fails to identify any terms of the Policy that were allegedly breached. (AmeriHealth Mot. 10–14.) But these arguments are unconvincing.

First, as already mentioned in a prior order, "a party can waive an anti-assignment provision via a written instrument, a course of dealing, or even passive conduct, i.e., taking no action to invalidate the assignment vis-a-vis the assignee." *Med-X Glob., LLC v. Azimuth Risk Sols., LLC*, No. 17-13086, 2018 WL 1726264, at *4 (D.N.J. Apr. 10, 2018) (citing cases) (internal quotation marks omitted). "[A]n administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014); *see, e.g.*, *Cal. Spine & Neurosurgery Inst. v. Blue Cross of Cal.*, 811 F. App'x 429, 429–30 (9th Cir. 2020) (reversing district court's finding of no waiver where plaintiff alleged it "submitted a reimbursement claim to [the insurer] *indicating it was acting as the member's assignee*, and [the insurer] partially denied the claim on a basis other than the anti-assignment provision" (emphasis added)).[8] Here, the Court previously dismissed Malibu's claim because it failed to allege that AmeriHealth had knowledge of Malibu's status as assignee. (*See* First MTD Order 19.) Now, Malibu alleges that it submitted reimbursement claims to AmeriHealth indicating that it was acting as LK's assignee, and that AmeriHealth either paid those claims or denied them on a basis other than the Policy's anti-assignment provision. (*See* FAC ¶¶ 150–52.) Taking

---

[8] Just as before, AmeriHealth argues vehemently that New Jersey law governs the Policy, but it does not explain why this distinction matters. (*See* AmeriHealth Mot. 13 ("[A]pplication of New Jersey law would not be contrary to a fundamental policy of California. California law is effectively the same.")). Thus, because it again does not appear that the Court's disposition turns on which law applies, the Court assumes without deciding that New Jersey law governs the Policy. (*See* Policy 72 ("This entire Policy is governed by the laws of the State of New Jersey.").)

these allegations as true, Malibu adequately alleges that AmeriHealth waived the anti-assignment provision.

Second, Malibu sufficiently identifies which provisions in the Policy were breached. Malibu alleges that the Policy required AmeriHealth to reimburse LK for certain necessary treatments, which Malibu provided to LK, but that AmeriHealth breached its duty to pay such reimbursements. (*See* FAC ¶¶ 308–10, 313–20.) Although Malibu could have provided more details regarding the Policy's exact terms, the allegations are sufficient to put AmeriHealth on notice of the claim against them. *See Porter v. Jones*, 319 F.3d at 494 ("[A] complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2)."). Accordingly, as to Malibu's seventh claim for breach of contract, brought in Malibu's own name as assignee, AmeriHealth's Motion is **DENIED**.

## V. CONCLUSION

In summary, the Motions are **GRANTED in part** and **DENIED in part**. (ECF Nos. 63, 64.) Magellan's Motion is **DENIED** with respect to Malibu's fifth claim for fraudulent inducement. AmeriHealth's Motion is **DENIED** with respect to Malibu's second, third, fourth, fifth, and seventh claims for breach of oral contract, breach of implied contract, promissory estoppel, fraudulent inducement, and breach of contract (brought as assignee), respectively. The Motions are **GRANTED** with respect to Malibu's remaining claims, which are **DISMISSED with prejudice**. Defendants shall file their Answer(s) pursuant to Rule 12(a)(4)(A).

**IT IS SO ORDERED.**

June 16, 2021

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**